**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------X
INTERNATIONAL FLAVORS         :
FRAGRANCES INC.,            :
                              :
            Plaintiff,      :    **06 Civ. 490 (JFK)**
                              :    <u>**OPINION and ORDER**</u>
       – against –        :
                              :
VAN EEGHEN INTERNATIONAL B.V.    :
and DeFRANCESCO & SONS, INC.,    :
                              :
            Defendants.    :
----------------------------------X

**APPEARANCES**

<u>**For Plaintiff International Flavors & Fragrances, Inc.**</u>:

     PITNEY HARDIN LLP
     7 Times Square
     New York, New York 10036
       Of Counsel:  Elizabeth J. Sher, Esq.
                  Robert G. Rose, Esq.


<u>**For Defendant Van Eeghen International B.V.**</u>:

     QUIRK and BAKALOR, P.C.
     845 Third Avenue
     New York, New York 10022
       Of Counsel:  Richard Bakalor, Esq.


<u>**For Defendant DeFrancesco & Sons, Inc.**</u>:

     KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN LLP
     69 East Jericho Turnpike
     Mineola, New York 11501
       Of Counsel:  Andrew J. Mihalick, Esq.

**JOHN F. KEENAN, United States District Judge**

**JOHN F. KEENAN, United States District Judge:**

Plaintiff International Flavors & Fragrances, Inc. ("IFF") has filed this action in order to recoup losses arising out of its use of noncompliant onion powder. Defendant Van Eeghen International, B.V. ("Van Eeghen") moves pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), respectively, to dismiss for lack of personal jurisdiction and improper venue. Defendant DeFrancesco & Sons, Inc. ("DeFrancesco") moves to dismiss for improper venue or, alternatively, to transfer the action to the United States District Court for the Eastern District of California under 28 U.S.C. §§ 1404(a) or 1406(a), or on <u>forum</u> <u>non</u> <u>conveniens</u> grounds.[1] Van Eeghen opposes a transfer. The Court finds that: (i) Van Eeghen is not subject to personal jurisdiction in New York, (ii) venue is improper in the Southern District of New York, and (iii) IFF could have brought this action in the Eastern District of California. Accordingly, the motions to dismiss are denied, and the action is transferred to the Eastern District of California under 28 U.S.C. § 1406(a).

---

[1] As the Court pointed out at oral argument, the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u> applies only to transfers abroad. Transfer of venue to another district for the convenience of the parties and witnesses is now governed by 28 U.S.C. § 1404(a). <u>See</u> <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 722, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996).

## BACKGROUND

The following facts are derived from IFF's Complaint and from the affidavits submitted on the motions. The Court construes these documents in the light most favorable to IFF, the plaintiff, and resolves all doubts in IFF's favor. See CutCo Indus. Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986).

IFF is a New York corporation with its principal place of business in Manhattan. (Compl. ¶ 1.) IFF manufactures and supplies flavors and fragrances to producers of food and beverage products, toiletries, soaps and other household products. (Compl. ¶ 6.) One of IFF's affiliates is International Flavors & Fragrances I.F.F. (Nederland) B.V. ("IFF Nederland"), which operates in Holland. (Dunsdon Aff. ¶ 5.) Van Eeghen is a Dutch limited liability company with its principal place of business in Amsterdam. (Bakalor Aff. ¶ 7.) Van Eeghen trades, among other things, in food ingredients, including herbs, spices and dried agriculture products. (Van Eeghen Aff. ¶ 6.) DeFrancesco is a California corporation with its principal place of business in Firebaugh, California. (DeFrancesco Aff. ¶ 3.) DeFrancesco manufactured and performed the initial processing of the onion powder at issue in this litigation. (DeFrancesco Aff. ¶ 5.)

Van Eeghen has supplied dehydrated vegetable products to IFF since before 1980. (Compl. ¶ 9.) Since the mid-1990s, IFF has specified that Van Eeghen obtain certain of these products,

including onion powder, from DeFrancesco. (Compl. ¶ 10.)  On February 26, 2000, Van Eeghen executed an IFF Product Questionnaire for onion powder in which Van Eeghen represented that its onion powder was "100% natural" and contained no "restricted materials" or "processing aids." (Compl. ¶ 11.)

Effective October 1, 2003 and January 1, 2005, IFF and Van Eeghen entered into Memoranda of Agreements ("Agreements") pursuant to which Van Eeghen agreed to supply, <u>inter</u> <u>alia</u>, onion powder to IFF for one year periods.  (Compl. ¶ 14.)  The Agreements specified that the onion powder be "non-treated" and that it come from DeFrancesco (Compl. ¶¶ 18-19.)  IFF says that the Agreements were prepared, authorized and executed in New York. (Dunsdon Aff. ¶ 9.)  The Van Eeghen employee who signed the Agreements claims that they were sent not from New York, but from IFF Nederland in Holland. (Keijzer Aff. ¶ 2.)  Van Eeghen's employees contend that all negotiations were with IFF Nederland, without any contact with IFF in New York. (Van Eeghen Aff. ¶ 18; Keijzer Aff. ¶¶ 3-4.)

From August 1, 2004 through April 1, 2005, IFF Nederland submitted purchase orders to Van Eeghen for "non-treated" onion powder. (Compl. ¶ 22.)  Van Eeghen sent the orders to DeFrancesco by email from Holland to Firebaugh, California. (DeFrancesco Aff. ¶ 10.)  DeFrancesco manufactured the powder at its Firebaugh location and, despite the "non-treated" language in

the Agreements, shipped the powder to a company in Tustin, California, for irradiating. (DeFrancesco Aff. ¶¶ 5-6.)  The powder then came back to Firebaugh for further processing. (DeFrancesco Aff. ¶ 7.)  DeFrancesco shipped the powder to Van Eeghen in Holland, from either the Port of Oakland or the Port of Long Beach. (DeFrancesco Aff. ¶ 11.)  Van Eeghen delivered the powder to IFF Nederland in Holland. (Van Eeghen Aff. ¶ 22; Fessl Aff. ¶ 15.)  IFF Nederland incorporated the powder into a wide variety of flavors for multiple customers. (Dunsdon Aff. ¶ 11.)

In March 2005, one of IFF's customers complained that certain flavors sold to it through IFF Nederland had been subjected to irradiation. (Dunsdon Aff. ¶ 10.)  IFF subsequently determined that the onion powder sold to IFF Nederland by Van Eeghen had been irradiated. (Dunsdon Aff. ¶ 11.)  On March 30, 2005, DeFrancesco confirmed that it had shipped lots containing irradiated onion powder to Van Eeghen between July 2004 and March 2005. (Dunsdon Aff. ¶ 11.)  DeFrancesco does not dispute that the powder was irradiated. (DeFrancesco Aff. ¶ 6.)  In response to this problem, IFF New York was required to (a) secure non-irradiated replacement product for the affected customers, (b) provide credit or refunds to customers for flavors that had not yet made their way into the customers' food products, and (c) quarantine and destroy irradiated onion powder and flavors

5

containing the onion powder that were still in IFF Nederland's own stock. (Dunsdon Aff. ¶ 16.)

One of IFF's large customers, The Proctor & Gamble Company ("P&G"), already had incorporated the flavors into its finished food products, which subsequently had to be recalled and destroyed. (Dunsdon Aff. ¶ 14.) IFF's representatives in New York negotiated a settlement with P&G representatives from Cincinnati. (Dunsdon Aff. ¶ 15.) On August 22, 2005, IFF wired an interim payment of $2,000,000 from its New York office to P&G in Cincinnati. (Weller Aff. ¶ 2.) IFF wired another payment of $4,437,983, again from New York, to P&G in December 2005. (Weller Aff. ¶ 3.) Over half of the latter payment arose out of the settlement of the onion powder matter. (Weller Aff. ¶ 3.)

On March 29, 2005, IFF put Van Eeghen on notice of its claim for damages relating to the irradiated onion powder. (Compl. ¶ 34.) On January 23, 2006, IFF filed its Complaint. IFF alleges seven causes of action, some sounding in contract and some in tort. The Complaint contains no personal jurisdiction allegations and only a terse venue statement. (Compl. ¶ 5.) The instant motions followed. During briefing, Van Eeghen commenced a proceeding in Holland that names IFF, DeFrancesco and IFF Nederland. (Bakalor Reply Aff. ¶ 39.) Van Eeghen hopes to litigate this dispute there and asks the Court not to transfer the action to California, even if California is an appropriate

forum. (Bakalor Reply Aff. ¶ 44.)   IFF contends that this

parallel litigation should not dissuade the Court from exercising

personal jurisdiction over both defendants, or transferring the

case to California. (Letter from E. Sher, Esq., Pitney Hardin

LLP, to Court (May 16, 2005).)

## **DISCUSSION**

## I.    **PERSONAL JURISDICTION —– VAN EEGHEN**

The plaintiff bears the burden of establishing the

Court's personal jurisdiction over the defendant for the purposes

of defeating a Rule 12(b)(2) motion.  <u>Bank Brussels Lambert v.</u>

<u>Fiddler Gonzalez & Rodriguez</u>, 171 F.3d 779, 784 (2d Cir. 1999).

In the absence of an evidentiary hearing, "the plaintiff need

make only a prima facie showing of jurisdiction through its own

affidavits and supporting materials."  <u>Marine Midland Bank, N.A.</u>

<u>v. Miller</u>, 664 F.2d 899, 904 (2d Cir. 1981).

In the absence of a controlling federal statute or

rule, a district court sitting in diversity resolves a personal

jurisdiction challenge by looking first to the law of the forum

and then to the Due Process Clause.  <u>Intermeat, Inc. v. Am.</u>

<u>Poultry Inc.</u>, 575 F.2d 1017, 1020 (2d Cir. 1978).  In this case,

the applicable law of the forum is New York's long-arm statute,

CPLR 301 and 302.  IFF makes no attempt to invoke CPLR 301, which

gives New York courts general jurisdiction over a non-domiciliary

corporation "engaged in ... a continuous and systematic course of

doing business [in New York]" <u>Beacon Enters. Inc. v. Menzies</u>,
715 F.2d 757, 762 (2d Cir. 1983) (internal quotation marks
omitted).  In addition, IFF concedes that the Court may not
derive personal jurisdiction over Van Eeghen from CPLR 302(a)(1),
which confers on the New York courts specific jurisdiction over a
foreign corporation that "transacts any business within the state
or contracts anywhere to supply goods or services in the state"
when the claim arises out of such transaction. (Tr. 19-20)[2]

IFF opts to focus exclusively on CPLR 302(a)(3)(ii).
Under this provision, a tortious act committed outside New York
causing injury to a person within the state gives rise to
personal jurisdiction, if the actor "expects or should reasonably
expect the act to have consequences in the state and derives
substantial revenue from interstate or international commerce."
The statute is applicable to both commercial and physical torts.
<u>Sybron Corp. v. Wetzel</u>, 46 N.Y.2d 197, 205, 385 N.E.2d 1055, 413
N.Y.S.2d 127 (1978).  In order to establish jurisdiction, the
plaintiff must show: (1) a tortious act outside New York, (2) a
cause of action arising from the act, (3) the act caused injury
to a person in New York, (4) the defendant expected or should
reasonably have expected the act to have consequences in New
York, and (5) the defendant derived substantial revenue from

---

[2] "Tr." refers to the transcript of the oral argument on the
motions, which was held on May 17, 2006.

interstate or international commerce.  LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214, 735 N.E.2d 883, 713 N.Y.S.2d 304 (2000). All five elements are essential.  Trafalgar Capital Corp. v. Oil Producers Equip. Corp., 555 F. Supp. 305, 310 (S.D.N.Y. 1983) (Weinfeld, J.).

Van Eeghen contends that IFF has not satisfied elements (3) and (4).  As to (3), an injury occurring in New York, IFF argues that the "first effect" from Van Eeghen's delivery of defective products was "the very real possibility of [IFF] losing substantial business from its affected customers."  IFF in New York received complaints from customers, ensured delivery of replacement product, and issued refunds or credits to the customers.  IFF concludes that it was "these 'effects' -- the remedial actions that IFF had to take to avoid losing customers or market share -- that led to IFF's ultimate financial injury." (IFF Mem. Opp. at 12.)

In determining whether an injury occurred in New York, courts apply a "situs of the injury" test.  This analysis requires a determination of "the original event which caused the injury."  Bank Brussels Lambert, 171 F.3d at 791.  "[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff."  Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990) (internal quotation marks and citation omitted).  "The

9

occurrence of financial consequences in New York due to the fortuitous location of plaintiff in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside of New York." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 209 (2d Cir. 2001) (internal quotation marks and citation omitted).

For example, in Trafalgar Capital, cited supra, a New York company tried to sue a Tennessee company in the Southern District of New York on a tortious interference with contract claim. Judge Weinfeld dismissed the claim, holding that "[o]ther than alleged loss of profits, there simply is no locus or contact within the state upon which a claim of injury within the state can be predicated." Trafalgar, 555 F. Supp. at 313. In American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., 439 F.2d 428 (2d Cir. 1971), cited by IFF, two New York companies claimed that a Michigan company damaged their business and engaged in unfair competition by stealing out-of-state customers. Id. at 430, 432. The Second Circuit affirmed the dismissal as to the defendant on personal jurisdiction grounds, holding: "Of course, there is no question that plaintiffs suffered some harm in New York in the sense that any sale lost anywhere in the United States affects their profits. But that sort of derivative commercial injury in the state is only the result of plaintiffs' domicile here." Id. at 433. The Circuit suggested, without

deciding, that the result may have been different "if the discernible local impact of the commercial injury to plaintiffs were greater, e.g., destruction of plaintiffs' business in New York by the loss of out-of-state customers." Id. at 435.

The Court of Appeals of New York came to the opposite result in Sybron Corp., cited supra. A New York manufacturer of glass-lined vessels sought to enjoin an out-of-state defendant from hiring one of plaintiff's former employees, and to enjoin the former employee from divulging trade secrets. Sybron, 46 N.Y.2d at 200. The Court of Appeals acknowledged that "[i]t has been said that remote injuries located in New York solely because of domicile or incorporation here do not satisfy CPLR 302 (subd [a], par 3)." Id. at 205. The court continued:

> Plaintiff's case does not rest on so narrow a foundation nor does its case depend on whether unfair competition injures it in every State in which it does business. It is, however, critical that it is New York where plaintiff manufactures and relines glass-lined equipment and the alleged trade secrets were acquired, and the economic injury plaintiff seeks to avert stems from the threatened loss of important New York customers."

Id.; see Harrison Conference Servs., Inc. v. Dolce Conference Servs., Inc., 768 F. Supp. 405, 407 (E.D.N.Y. 1991) ("If defendants improperly use the trade secrets to take New York customers from plaintiff, defendants will cause an injury within New York."). Jurisdiction also was found in Hargrave v. Oki Nursery, Inc., 636 F.2d 897 (2d Cir. 1980), cited by IFF. In

11

that case, New York plaintiffs sued a California corporation that had shipped plaintiffs diseased wine grape vines. Id. at 898. The complaint alleged, inter alia, fraudulent misrepresentation. The Circuit concluded: "One immediate and direct 'injury' [defendant's] alleged tortious misrepresentations caused to plaintiffs was the loss of money paid by them for the diseased vines. That injury was immediately felt in New York where plaintiffs were domiciled and doing business, where they were located when they received the misrepresentations, and where the vines were to be shipped." Id. at 900.

　　　　With the foregoing cases in mind, the Court turns to the facts at hand. IFF alleges in its Complaint that "Van Eeghen and De Francesco represented to IFF that the onion powder supplied to IFF was produced without irradiation, when in fact, they supplied irradiated onion powder to IFF." (Compl. ¶ 70.) This imprecisely worded allegation leaves the reader unsure as to whether the misrepresentation occurred before or after the shipments of powder. IFF's brief is somewhat more specific: "Whether deemed a negligent misrepresentation or a negligent omission, that commission and omission occurred in Europe on each separate occasion on which Van Eeghen shipped irradiated onion powder to IFF Nederland. In reliance on Van Eeghen's conduct and silence, IFF permitted its affiliates to use the product that Van Eeghen supplied, and to continue to order more." (IFF Mem. of Law

in Opp. 10-11.)  Here it sounds as if the misrepresentations and omissions were contemporaneous with the shipments.  Regardless of when the misstatements and omissions occurred, the evidence demonstrates that they occurred outside New York.  They were directed at IFF Nederland through shipments to IFF Nederland, not at IFF in New York.  In fact, IFF's chief operating officer admits in his affidavit that it was IFF Nederland (not IFF) that incorporated the defective powder into its flavors and sold the onion powder in question. (Dunsdon Aff. ¶ 10-11.)

        Nevertheless, IFF argues that the "first effect" (or "original event") of the alleged misrepresentations and omissions was that IFF in New York faced the possibility of losing business from its customers.  In the Court's view, this was the final economic consequence of Van Eeghen's alleged torts, not the first effect.  As the Second Circuit has explained, "[The] 'original event' is ... generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort.... We have previously held in applying N.Y. CPLR § 302(a)(3) that the 'original event' occurs 'where the first effect of the tort ... that ultimately produced the final economic injury' is located." DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84-85 (2d Cir. 2001) (quoting Bank Brussels Lambert, 171 F.3d at 791-92).  The first effect of the alleged initial tort was when IFF Nederland incorporated the onion powder into

13

its flavors and shipped the flavors to the customers.  It was IFF
Nederland that relied on the alleged misstatements and omissions
in the first instance, not IFF in New York.  To the extent that
IFF suffered economic losses in New York because of the alleged
misstatements or omissions, those losses constituted the "final
economic injury" or "felt consequences" of the alleged torts, not
the "first effect."

       IFF's New York injuries arose solely out of the fact
that IFF is domiciled here.  The same analysis applies to IFF's
allegations to the extent they sound in products liability or
breach of warranty.  For these reasons, IFF cannot show that Van
Eeghen's alleged out-of-state torts caused injury in New York, as
CPLR § 302(a)(3)(ii) requires.  The Court holds that Van Eeghen
is not subject to personal jurisdiction in New York.  Van
Eeghen's venue concerns therefore are moot.

## II.  VENUE –– DeFRANCESCO

       DeFrancesco does not contest personal jurisdiction in
New York.  Instead, DeFrancesco moves for dismissal on venue
grounds.  In diversity actions, venue is proper only in:

>       (1) a judicial district where any defendant
>       resides, if all defendants reside in the same
>       state, (2) a judicial district in which a
>       substantial part of the events or omissions giving
>       rise to the claim occurred ... or (3) a judicial
>       district in which any defendant is subject to
>       personal jurisdiction at the time the action is
>       commenced, if there is no district in which the
>       action may otherwise be brought.

28 U.S.C. § 1391(a).  Where, as here, an action involves an alien
(Van Eeghen) and a citizen (DeFrancesco), venue for the entire
action may be laid in the district where the citizen could be
sued alone.  See 28 U.S.C. § 1391(d); Osis v. 1993 GF P'ship,
L.P., No. 03:99CV0797 AVC, 2000 WL 840050, at *5 (D. Conn. Mar.
31, 2000); In re Triton Ltd. Secs. Litig., 70 F. Supp. 2d 678,
683 (E.D. Tex. 1999); 15 Wright, Miller & Cooper, Federal
Practice & Procedure § 3807, at 76 (2d ed. 1986).

Section 1391(a)(1) is inapplicable because Van Eeghen
and DeFrancesco do not reside in the same district.  DeFrancesco
argues that § 1391(a)(2) does not apply because there was no
contract between DeFrancesco and IFF.  The purchase orders and
acknowledgments were sent between IFF Nederland in Holland and
DeFrancesco in California.  The manufacturing of the onion powder
took place in California.  There were no contacts with New York,
notwithstanding the Questionnaire. (DeFrancesco Mem. in Supp. at
4-5).  IFF argues that the agreements between IFF and Van Eeghen
contain IFF's New York address and that DeFrancesco's obligations
under the indemnity provisions of the agreements would be
performed in New York. (Id. at 9).  IFF reiterates that its
negotiation and payment of damages to P&G occurred in the
Southern District of New York. (Id. at 11).

In assessing a venue motion under Section 1391(a)(2),
the Court must "identify the nature of the claims and the acts or

15

omissions that the plaintiff alleges give rise to those claims"
and "determine whether a substantial part of those acts or
omissions occurred in the district where suit was filed, that is,
whether significant events or omissions material to [those]
claim[s] ... have occurred in the district in question." <u>Daniel
v. Am. Bd. of Emergency Med.</u>, 428 F.3d 408, 432 (2d Cir. 2005)
(analyzing the parallel language in 28 U.S.C. § 1391(b)(2);
citations and internal quotation marks omitted).  The common
denominator of all of IFF's claims is the irradiated onion
powder.  Van Eeghen e-mailed purchase orders to DeFrancesco at
the latter's headquarters in Firebaugh, located in the Eastern
District of California.  DeFrancesco manufactured the powder
there.  After the powder was irradiated in Tustin (within the
Central District of California), the powder was shipped back to
DeFrancesco in Firebaugh for further processing, including
blending with other non-irradiated powder.  DeFrancesco then
shipped the powder to Van Eeghen in Holland.  Van Eeghen
delivered the powder to IFF Nederland in Holland.  IFF Nederland
delivered flavors containing the powder to its customers, none of
which were in New York.

Even if it is true that defendants' supplying of
irradiated powder breached a contract that IFF prepared and
signed in New York, the evidence shows that Van Eeghen negotiated
this contract with IFF Nederland in Holland and signed it in

Holland.  DeFrancesco was not a signatory to the agreements.  In 2000, DeFrancesco had completed an IFF Questionnaire, but there is no evidence that it did so in New York.  Having identified the acts or omissions given rise to IFF's claims, the Court concludes that the substantial events giving rise to this action arose in the Eastern District of California, or perhaps in Holland, but not in the Southern District of New York.  Venue is not appropriate in this district under Section 1391(a)(2).

Because substantial events underlying the claim occurred in the Eastern District of California, IFF may not avail itself of 28 U.S.C. § 1391(a)(3).  This fallback provision allows venue in any district in which any defendant is subject to personal jurisdiction, "if there is no district in which the action may otherwise be brought."  The action could have been brought in the Eastern District of California, an appropriate venue under Section 1391(a)(2).

Based on the foregoing, the Court concludes that the Southern District of New York is an improper venue.

## III.  TRANSFER TO CALIFORNIA

DeFrancesco argues that if the Court finds venue improper, it should dismiss the complaint or transfer the action to the Eastern District of California under 28 U.S.C. § 1406(a).  Van Eeghen opposes a transfer to California on personal jurisdiction grounds.  IFF argues that California is an

17

appropriate "secondary choice" if the action does not remain in New York. (Tr. 19.)

The statute governing defects of venue provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." Daniel, 428 F.3d at 435; see Metropa Co. v. Choi, 458 F. Supp. 1052, 1055-56 (S.D.N.Y. 1978) (Weinfeld, J.) ("Courts will generally transfer such cases [where venue is improper] when it is clear wherein proper venue would be laid."). The Court has the authority to effect a Section 1406(a) transfer even though it lacks personal jurisdiction over one of the defendants. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465-66, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962).

In determining the appropriate transferee district, the Court must look to a district in which the action "could have been brought." Venue is appropriate in the Eastern District of California for the reasons stated on page 16 of this Order. The tricky question concerns personal jurisdiction. DeFrancesco obviously is subject to service of process in its home state. Van Eeghen claims, however, that it is not subject to personal

jurisdiction in California for a variety of reasons.  IFF and DeFrancesco argue the opposite.

The prevailing view is that the existence of personal jurisdiction in the transferee district is a prerequisite to a Section 1406(a) transfer.  See <u>Yurman Designs, Inc. v. A.R. Morris Jewelers, LLC</u>, 60 F. Supp. 2d 241, 246 (S.D.N.Y. 1999) (Sweet, J.); <u>Volkswagen de Mexico, S.A. v. Germanischer Lloyd</u>, 768 F. Supp. 1023, 1028-29 (S.D.N.Y. 1991) (Cedarbaum, J.); 17 James Wm. Moore, et al., <u>Moore's Federal Practice</u> § 111.33[1] (3d ed. 2006); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice & Procedure</u> § 3827, at 274-75 (2d ed. 1986).  However, some transferor courts have recognized the possibility of leaving a complicated jurisdictional dispute to the transferee court, which is in the best position to apply its forum state's long-arm statute.  See <u>Brownstein v. N.Y. Univ. Med. Ctr.</u>, Civ. A. No. 94-907, 1994 WL 669620, at *9 (D.N.J. 1994) (Wolin, J.) (deciding the jurisdictional issue, but acknowledging that "it may be permissible [under Section 1406] to leave the question of personal jurisdiction to the transferee."); <u>Jennings v. Entre Computer Ctrs., Inc.</u>, 660 F. Supp. 712, 716 (D. Me. 1987) (Carter, J.) (reserving personal jurisdiction issue as to some defendants for the transferee court); Wright, Miller & Cooper, <u>supra</u>, § 3827, at 276-77.  The instant case lends itself to the latter approach.

It is a serious matter to "undertake a determination of the jurisdiction of a sister district." Brownstein, 1994 WL 669690, at *9. Without more argument and perhaps supplementation of the record, the Court is not in a position to decide whether Van Eeghen is subject to personal jurisdiction in California. As a practical matter, if the Court dismisses the instant action, IFF inevitably will re-file in the Eastern District of California (its second choice), and Van Eeghen will bring a personal jurisdiction motion before that court. Van Eeghen's counsel acknowledged this possibility at oral argument. (Tr. 32-33.) The Court sees no need to dismiss in order to achieve this result. Dismissal is a harsh remedy that is best avoided when another avenue is open. In the interest of justice, the Court thus transfers the case to the Eastern District of California and reserves the personal jurisdiction question for that Court.

The existence of a second proceeding in Holland does not alter the outcome. Van Eeghen's argument that Holland is a superior jurisdiction to the Eastern District of California (Bakalor Reply Aff. ¶¶ 41-43) is essentially a forum non conveniens argument. It cannot defeat a Section 1406(a) transfer. Van Eeghen is free to litigate this issue in the California court, along with the personal jurisdiction issue.

## CONCLUSION

The Court may not exercise personal jurisdiction over Van Eeghen under CPLR 302(a)(3)(ii). The Court may exercise jurisdiction over DeFrancesco, but venue in the Southern District of New York is improper under 28 U.S.C. § 1391(a). The Court finds that the Eastern District of California is a venue in which this action could have been brought. Accordingly, DeFrancesco's motion for a transfer of venue under 28 U.S.C. § 1406(a) is granted. Because transfer is ordered under Section 1406(a), there is no need to rule on the 28 U.S.C. § 1404(a) aspect of DeFrancesco's motion. The motions by Van Eeghen and DeFrancesco to dismiss are denied. The Court orders this action transferred to the United States District Court for the Eastern District of California. The Clerk of the Court shall close this case and send a certified copy of this Order with any original documents filed in this action to the Clerk of the Court for the Eastern District of California.

**SO ORDERED.**

Dated: New York, New York
     July ⟨ 6 ⟩ , 2006

**JOHN F. KEENAN**
**United States District Judge**

21